UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAMON SILVA,

       Plaintiff,

  v.

CAMERON WALKER, *et al.*,

       Defendants.

Case No. C19-1294-RAJ-MLP

REPORT AND RECOMMENDATION

### I.  INTRODUCTION AND SUMMARY CONCLUSION

   This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Ramon Silva is currently confined in the King County Jail ("Jail") in Seattle, Washington as a pretrial detainee. Plaintiff asserts in his complaint that Defendants, all of whom are Jail employees, violated his Eighth Amendment rights when they used excessive force against him, failed to protect him from self-harm, and refused to decontaminate him after spraying him with pepper spray. (*See* Dkt. # 5 at 6-7.) Plaintiff identifies Sergeant Cameron Walker, and Officers Jason Edmond, Daniel Molina, and Barrett Horn as defendants in his complaint. (*Id*. at 1, 3.) Plaintiff seeks damages. (*Id*. at 7.)

REPORT AND RECOMMENDATION
PAGE - 1

1    Defendants now move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. # 11.) Plaintiff has filed a response opposing Defendants' motion (dkt. # 12), and Defendants have filed a reply to Plaintiff's response (dkt. # 14). The Court, having reviewed Plaintiff's complaint, Defendants' motion to dismiss, and all briefing of the parties, concludes that Defendants' motion to dismiss should be granted in part and denied in part.

## II.    BACKGROUND

On July 29, 2019, Plaintiff was housed in the Jail's psychiatric ward where he was under observation after having been removed from suicide watch. (Dkt. # 5 at 4, ¶¶ 3, 4.) Plaintiff claims that he experienced a mental health breakdown which caused him to cut himself on the arm with a sharp piece of grout which he had apparently extracted from his cell wall. (*Id.*, ¶ 4.) Plaintiff informed officers that he was in possession of a "self-harm tool" which he maintains should not have been available to him given that he was on "psych watch." (*Id.*, ¶ 5.) Plaintiff further informed officers that they were neglecting their duty to protect him from himself. (*Id.*) According to Plaintiff, Defendants Walker, Molina, Edmond, and Horn thereafter came to his cell, demanded he turn over the piece of grout, and threatened to use a taser gun if he refused their demands. (*Id.* at 4-5, ¶ 6.) Plaintiff claims that he was naked at the time and hearing voices commanding him not to turn the grout over to the officers. (*Id.* at 5, ¶ 7.)

Plaintiff asserts that when he refused to turn over the grout, Defendant Walker ordered Defendant Horn to deploy pepper spray even though Plaintiff was not actively engaged in self-harm at that time and had not engaged in self-harm in Defendants' presence. (*Id.*, ¶ 8.) Plaintiff claims that he was "covered from head to toe" in pepper spray by Defendant Horn. (*Id.*, ¶ 9.) Defendants again demanded that Plaintiff turn over the piece of grout but, instead of complying with the demand, Plaintiff responded, "you better talk to me with some respect." (*Id.*, ¶ 10.)

REPORT AND RECOMMENDATION
PAGE - 2

Plaintiff was pepper sprayed again, soaking his head and body with spray. (*Id.*, ¶ 11.) At that point, Plaintiff handed over the piece of grout. (*Id.*) Plaintiff was then cuffed, a skin-tight spit mask was placed over his head, and he was strapped into a wheel chair while still naked. (*Id.* at 5-6, ¶ 12.)

Plaintiff asserts that his mattress and blanket were removed from his cell and he was returned to the same cell where the pepper spray had been deployed. (*Id.* at 6, ¶ 13.) A helmet was placed on Plaintiff's head over the spit mask and he was strapped to a restraint board naked and soaked in pepper spray. (*Id.*) Plaintiff claims that after strapping him to the restraint board, Defendants closed the cell door "leaving him choking on fumes with a skin tight spit mask soaked in pepper spray a helmet on and his entire body covered in pepper spray struggling to breath for 4 hours straight." (*Id.*, ¶ 14.) Plaintiff further claims that Defendants failed to decontaminate him which caused him to experience a "firestorm" from the pepper spray. (*Id.*, ¶ 15.)

### III.    DISCUSSION

A.    **Applicable Standards**

*1.    Motion to Dismiss Standard*

A defendant may move for dismissal under Rule 12(b)(6) when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal may be based on either the lack of a cognizable

legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

### 2. Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (i) he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### 3. Qualified Immunity Standard

Qualified immunity protects § 1983 defendants from liability for civil damages so long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the

plainly incompetent or those who knowingly violate the law.'" *Ashroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court set forth a two-prong test to be applied in evaluating claims of qualified immunity: (1) whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

**B.     Analysis**

Defendants argue in their motion to dismiss that Plaintiff makes no plausible allegations in his complaint that they violated the Fourteenth Amendment by inflicting pain in an unnecessary and wanton way, by being deliberately indifferent to a serious medical need, or by being deliberately indifferent to Plaintiff's psychiatric needs. (*See* Dkt. # 11 at 3-11.) Defendants further argue that even if they did violate Plaintiff's Fourteenth Amendment rights, they are entitled to qualified immunity because the right at issue was not clearly established. (*See id.*)

*1.     Excessive Force*

Plaintiff alleges that his constitutional rights were violated when he was pepper sprayed, strapped to a restraint board, placed in a spit mask and helmet, and left for four hours in the cell where he was sprayed.[1] The Due Process Clause protects pretrial detainees from excessive force.

---

[1] While Plaintiff alleges that Defendants' conduct violated his Eighth Amendment rights, because Plaintiff was a pretrial detainee at the time of the alleged incident, his rights derive from the Due Process Clause of the Fourteenth Amendment and not from the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

REPORT AND RECOMMENDATION
PAGE - 5

*Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2470 (2015). To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 2473. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" without regard to the officers' underlying intent or motivation. *Id*. at 2472-73 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must weigh the circumstances from the viewpoint of a reasonable officer at the scene, and must "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 2473 (source and internal quotation marks omitted). The non-exclusive list of factors potentially relevant to the assessment of reasonableness include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. (citing *Graham*, 490 U.S. at 396).

This Court has little difficulty concluding, in light of the facts alleged by Plaintiff, that the force used by Defendants to subdue and restrain Plaintiff in the first instance was objectively reasonable. Plaintiff acknowledges that he was experiencing a mental health breakdown and had already harmed himself with a sharp piece of grout he had apparently extracted from his cell wall. (Dkt. # 5, ¶ 3.) Plaintiff advised officers that he was in possession of a "self harm tool," accused officers of failing to protect him from himself by allowing him access to the tool, and then refused commands that he turn over the tool. (*Id*., ¶¶ 5-7.) Under such circumstances, it was objectively reasonable for officers to deploy pepper spray to force Plaintiff to relinquish the

REPORT AND RECOMMENDATION
PAGE - 6

grout and it was likewise reasonable for officers to restrain Plaintiff to prevent him from causing further harm to himself while in the midst of his mental health breakdown.

Plaintiff complains that he was not actively engaged in self-harm at the time the pepper spray was deployed and that officers did not summon mental health professionals to attempt to calm him down to safely remove the implement without the use of force. (*See id.*, ¶ 8.) The fact that Plaintiff was not actively engaged in self-harm is irrelevant given that Plaintiff had already harmed himself and was refusing to relinquish the instrument used to inflict the harm. And, the fact that Defendants opted to employ pepper spray under emergent circumstances rather than summon mental health professionals does not render Defendants actions objectively unreasonable.

Plaintiff has not alleged a viable Fourteenth Amendment claim arising out of Defendants' decisions to deploy pepper spray and to restrain Plaintiff using the restraint board. Defendants' motion to dismiss should therefore be granted as to those claims.

However, as Plaintiff correctly points out in his response to Defendants' motion to dismiss, Defendants do not challenge the entirety of the excessive force claim asserted in the complaint. In particular, Defendants do not specifically address Plaintiff's claim that his prolonged exposure to the pepper spray, which he alleges covered his head and naked body and had soaked into the skin-tight spit mask he was forced to wear while he remained strapped to the restraint board for four hours, constitutes excessive force. As Defendants have not specifically moved to dismiss this portion of Plaintiff's excessive force claim, and as it appears that this portion of the claim does, in fact, state a viable claim for relief, dismissal of the claim is not warranted.

REPORT AND RECOMMENDATION
PAGE - 7

### 2. *Inadequate Medical Care/Failure to Protect*

Plaintiff also alleges in his complaint that Defendants failed to protect him from himself while he was on observation in the psychiatric ward and that they were deliberately indifferent to his medical needs when they refused to decontaminate him of pepper spray before placing him on a restraint board for four hours while wearing a spit mask soaked in pepper spray and a helmet on his head. (Dkt. # 5 at 7.)

Claims alleging a due process violation for failure to provide adequate medical care or for failure to provide safe conditions of confinement are evaluated under an objective deliberate indifference standard. *See Castro v. Cnty of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *Gordon v. Cnty of Orange*, 888 F.3d 1118 (9th Cir. 2018). The elements of such a claim are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125 (citing *Castro*, 833 F.3d at 1071).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted sources omitted)). A defendant's "mere lack of due care" is insufficient to state a Fourteenth Amendment claim. *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted source omitted)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d

at 1071).

As to Plaintiff's claim that Defendants failed to protect him from himself, Defendants argue that Plaintiff has made no plausible allegations that would support a claim of deliberate indifference and that Plaintiff has, at most, alleged that officers were negligent in allowing him to remove a piece of grout from the wall. This Court concurs. Plaintiff alleges he was on observation in the psychiatric ward after being removed from suicide watch. The fact that officers did not "observe" Plaintiff removing a piece of grout from the wall of his cell constitutes, at most, a lack of due care, which is insufficient to state a claim for relief under the Fourteenth Amendment. Defendants' motion to dismiss should therefore be granted with respect to this claim.

As to Plaintiff's claim that Defendants were deliberately indifferent to his medical needs when they refused to decontaminate him of pepper spray, Defendants argue that Plaintiff makes no plausible allegation that they were deliberately indifferent to a serious medical need. In support of this argument, Defendants cite to cases based on significantly different facts than those presented here. *See Allen v. Bosley*, 253 Fed. Appx. 658 (9th Cir. 2007); *Boyce v. McKnight*, 2015 WL 8778330 (N.D. Ill. Dec. 15, 2015). In *Allen*, a prisoner was exposed to pepper spray when it was deployed to extract another inmate from a nearby cell. *Allen*, 253 Fed. Appx. at 659. The defendants in *Allen* turned off the unit ventilation system before extracting the other inmate, anticipating that additional pepper spray would be used, and afterwards turned the ventilation on a high setting and used an additional fan to clear the air of lingering vapors. *Id*. In this context, the court determined that the defendants had acted reasonably. The court also determined that the plaintiff had presented evidence of no actual injury other than "the *transitory* effects of the pepper spray." *Id*. at 660 (emphasis added).

REPORT AND RECOMMENDATION
PAGE - 9

In *Boyce*, a prisoner was exposed to pepper spray when an officer inadvertently released pepper spray in a gymnasium where the prisoner was attending a religious service with other inmates. *Boyce*, 2015 WL 8778330, at *3. The prisoner was thereafter permitted to go to a bathroom in the gymnasium and wash the chemicals off his face, nose, and mouth. *Id*., at *4. The court concluded that under these circumstances the prisoner had failed to demonstrate an objectively serious medical need, and it noted as well that multiple courts had held the "lingering" or temporary effects of exposure to pepper spray do not constitute an objectively serious medical condition. *See id*., at *10-11.

Unlike the cases cited by Defendants where the exposure to pepper spray was temporary or transitory, Plaintiff here alleges that his head was covered with a pepper spray-soaked spit mask and helmet for four hours and that his entire naked body was covered in pepper spray. Plaintiff claims that he was struggling to breath for the four hours the spit mask remained in place and that he was experiencing a "firestorm" as a result of the spray. (Dkt. # 5 at 6.) While it is true that pepper spray ordinarily does not create a serious medical need because it causes only temporary discomfort, the Ninth Circuit has recognized that the failure of prison officials to properly decontaminate a prisoner exposed to pepper spray can support a deliberate indifference claim because of the effects of prolonged exposure to the chemical. *See Clement v. Gomez*, 298 F.3d 898, 904-06 (9th Cir. 2002).

In *Clement*, inmates were exposed to pepper spray that had been deployed to quell a prison fight and they were not permitted to shower until four hours after the incident. The Ninth Circuit recited the well-recognized standard that a serious medical need is present "whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and concluded that the plaintiffs' submissions documenting the

REPORT AND RECOMMENDATION
PAGE - 10

painful effects of the pepper spray were sufficient to satisfy this standard. *Id*. at 904 (internal quotations and citations omitted). In light of this authority, Plaintiff here has, in this Court's view, alleged sufficient facts to state a viable deliberate indifferent claim based upon his prolonged exposure to the pepper spray.

Defendants argue that even if they did violate the Fourteenth Amendment through their deliberate indifference to a serious medical need, they are entitled to qualified immunity because it is not clearly established that the application of pepper spray alone results in a serious need. (Dkt. # 11 at 9.) Defendants rely on the same two cases discussed above, *Allen* and *Boyce*, to support this argument. (*See id*. at 10.) They further argue that Plaintiff has not identified any sufficiently similar cases "that clearly establish beyond debate that the application of pepper spray *alone* creates a serious medical need that requires immediate treatment." (Dkt. # 14 at 4 (emphasis added).)

Of course, Plaintiff is not alleging that pepper spray *alone* created a serious medical need, he is alleging that close and prolonged contact with pepper spray; *i.e.*, spray covering his naked body and soaking a skin-tight face mask for a period of four hours, created a serious medical need. It is concerning that Defendants have not addressed, over even acknowledged, this aspect of Plaintiff's claim. The Court cannot reasonably make any determination regarding qualified immunity given that Defendants have apparently not even framed the question accurately at this juncture. Accordingly, Defendants' motion to dismiss should be denied with respect to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs.

## IV.   CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion to dismiss (dkt. # 11) be granted to the extent Plaintiff claims that the deployment of pepper spray and placement

REPORT AND RECOMMENDATION
PAGE - 11

on a restraint board constituted excessive force and to the extent Plaintiff claims that Defendants failed to protect him from himself. The Court further recommends that Defendants' motion to dismiss be denied to the extent Plaintiff claims that his prolonged restraint and exposure to pepper spray without decontamination constituted excessive force and deliberate indifference. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 20, 2020**.

DATED this 25th day of February, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge